FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2012 APR 18 P 3: 19

CLERK_____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| LAJUANA BLACKWELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 111-022 |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| of Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

LaJuana Blackwell ("Plaintiff") appeals the decision of the Commissioner of Social Security ("Commissioner") partially denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS**, pursuant to sentence four of 42 U.S.C. § 405(g), that the Commissioner's final decision be **REVERSED** and that the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

## I.    BACKGROUND

Plaintiff protectively applied for DIB and SSI on March 14, 2006, alleging a disability onset date of November 22, 2006.  Tr. ("R."), pp. 106-09, 112-17.  The Social Security Administration denied Plaintiff's applications initially, R. 53-54, and on reconsideration, R.

55-56. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), and the ALJ held a video hearing on March 12, 2010. R. 37-52. At the hearing, the ALJ heard testimony from Plaintiff, who appeared without counsel, as well as clinical psychologist Richard Gross, Ph.D., who testified as a Medical Expert ("ME"), and Richard Smith, Ph.D., who testified as a Vocational Expert ("VE"). See id. On March 23, 2010, the ALJ issued a partially favorable decision. R. 19-31.

Applying the sequential process required by 20 C.F.R. §§ 404.1520 and 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since November 22, 2006 (20 C.F.R. §§ 404.1520(b), 404.1571 *et seq.*, 404.920(b), & 416.971 *et seq.*).

2. At all times relevant to this decision, the claimant has had the following severe impairments: ovarian teratoma with paraneoplastic syndrome, status post surgery; and effects from limbic encephalitis (20 C.F.R. §§ 404.1521(c) & 416.921(c)).

3. From November 22, 2006, through November 22, 2007, the claimant did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d) & 416.920(d)).

4. From November 22, 2006, through November 22, 2007, the claimant had the residual functional capacity ("RFC") to perform sedentary work.[1] However, due to the severity of her cognitive disorder due to

---

[1]"Sedentary work" is defined as work that involves:

lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

limbic encephalitis, the claimant lacked the ability to do sustained work-related physical and mental activities in a work setting during that period on a regular and continuing basis. Therefore, during this period, the claimant was unable to perform any of her past relevant work as a call order clerk/telemarketer, machine operator, or census taker.

5.    Considering the claimant's age, education, work experience, and RFC, as well as the testimony of the VE, there were no jobs that existed in significant numbers in the national economy that the claimant could perform from November 22, 2006, through November 22, 2007 (20 C.F.R. §§ 404.1560(c), 404.1566, 404.960(c), 404.966). Therefore, the claimant was under a disability, as defined in the Social Security Act, from November 22, 2006, through November 22, 2007 (20 C.F.R. §§ 404.1520(g) & 416.920(g)).

R. 23-26.

The ALJ then determined that "medical improvement" occurred as of November 23, 2007. R. 720. Following the sequential process set forth in 20 CFR §§ 404.1594(f) and 416.994(b)(5) for determining whether a disability has ceased, the ALJ found:

1.    Beginning on November 23, 2007, the claimant has not had an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1594(f)(2) & 416.994(b)(5)(i)).

2.    Beginning on November 23, 2007, the claimant has had the RFC to perform light work,[2] except the claimant would be precluded from skilled work and

---

20 C.F.R. §§ 404.1567(a) & 416.967(a).

[2]"Light work" is defined as work that involves:

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

work around hazards.

3.　The medical improvement that has occurred is related to the ability to work (20 C.F.R. §§ 404.1594(b)(4)(i) & 416.994(b)(1)(iv)(A)).

4.　Beginning on November 23, 2007, the claimant has been capable of performing her past relevant work as a call order clerk and census taker. This work does not require the performance of work-related activities precluded by the claimant's current RFC (20 C.F.R. §§ 1565 & 406.965). Therefore, the claimant's disability ended on November 23, 2007 (20 C.F.R. §§ 404.1594(f)(7) & 416.994(b)(5)(vi)).

R. 27-31.

When the Appeals Council denied Plaintiff's request for review, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action in the United States District Court for the Southern District of Georgia requesting reversal of the partially adverse decision. Plaintiff argues that (1) the ALJ improperly disregarded the opinion of her treating physician; (2) the ALJ erred in determining that medical improvement occurred as of November 23, 2007; (3) the ALJ improperly relied on the VE's testimony in finding that Plaintiff could perform past relevant work as of November 23, 2007; and (4) the ALJ erred in conducting a hearing at which Plaintiff was not represented by counsel because she had not knowingly and intelligently waived her right to legal representation. (See doc. no. 10 (hereinafter "Pl.'s Br.").) The Commissioner maintains that the decision to partially deny Plaintiff's applications for benefits was supported by substantial evidence and that Plaintiff's waiver of her right to representation at the hearing was valid. (See doc. no. 10 (hereinafter "Comm'r's Br.").)

---

20 C.F.R. §§ 404.1567(b) & 416.967(b).

4

## II.    STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Cornelius, 936 F.2d at 1145. Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary

5

evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to his conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III.     DISCUSSION

As noted above, Plaintiff's first allegation of error is that the ALJ improperly disregarded the opinion of her treating physician in assessing her RFC for the period in which he found her not to be disabled – *i.e.*, the period beginning November 23, 2007. In particular, Plaintiff asserts that the ALJ erred when he discounted the opinion of Nicholas G. Avgeropoulos, M.D., who treated Plaintiff in his capacity as a physician and Program Director at the NeuroOncology Center in Orlando, Florida. See Pl.'s Br., pp. 12-14.

In the Eleventh Circuit, a treating physician's opinion must be given substantial weight. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986) (*per curiam*). Refusal to give a treating physician's opinion substantial weight requires that the Commissioner show good cause. Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987). "The [Commissioner] must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." MacGregor v. Bowen, 786 F.2d 1050, 1053

6

(11th Cir. 1986); see also Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1159 (11th Cir. 2004) (*per curiam*) (ruling that ALJ must accord substantial or considerable weight to opinion of treating physician unless "good cause" to the contrary is shown); Broughton v. Heckler, 776 F.2d 960, 961-62 (11th Cir. 1985) (*per curiam*) (same). The Commissioner, however, is not obligated to agree with a medical opinion if the evidence tends toward a contrary conclusion. Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985) (*per curiam*). Indeed, a treating physician's opinion may be properly discounted if it is unsupported by objective medical evidence, is merely conclusory, or is inconsistent with the physician's medical record. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991).

Furthermore, under Social Security Ruling 96-5p, the determination of disability regarding a Social Security claim is reserved to the Commissioner, and treating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance. See also 20 C.F.R. § 404.1527(e); Cooper v. Comm'r of Soc. Sec., 373 F. App'x 961, 962 (11th Cir. 2010) (*per curiam*) ("The task of determining a claimant's ability to work is within the province of the ALJ, not a doctor . . . .").

In this case, during the latter part of 2006, Plaintiff began experiencing symptoms that included "spells of altered mental status," "paranoid delusions," "recurrent abdominal pain," and "some psychomotor retardation." R. 228. Physicians at the Medical College of Georgia diagnosed Plaintiff with paraneoplastic limbic encephalitis caused by an ovarian teratoma and, following some initial difficulty, provided treatment to which Plaintiff responded. R. 230. Despite this positive response and steady improvement, Plaintiff continued to suffer

7

effects from her condition, including impairments in her cognitive function, mobility, and self-care skills. R. 283.

Plaintiff began to see Dr. Avgeropoulos "for ongoing management of her care and rehabilitation" in June of 2007. Pl.'s Br., p. 4. In a treatment record dated June 27, 2007, Dr. Avgeropoulos noted that Plaintiff had "fine motor inabilities on the left" and recommended evaluation by a neuropsychologist "for cognitive testing and for 'vocational rehabilitation' strategies as well as to tease out the emotional impact that [her condition] has left on her in addition to potential cognitive/memory limitations." R. 366. In a letter, which was also dated June 27th, Dr. Avgeropoulos stated:

> [Plaintiff] is left with residual cognitive defects as well as left-sided infacility. She has been disabled from this condition, which indeed is a rare complication of many times benign uncontrollable tumor. This has left her disabled and she is currently unable to drive or work outside of the home to seek gainful employment.

R. 365.

Dr. Avgeropoulos's treatment note from August 20, 2007, similarly documents Plaintiff's ongoing cognitive impairment. R. 364. In a letter dated September 27, 2007, Dr. Avgeropoulos stated that Plaintiff's "residual cognitive defects" and "left-sided infacility" rendered her "totally and permanently disabled." R. 363. A treatment note from Dr. Avgeropoulos dated October 29, 2007, indicated neurological improvement and a decrease in Plaintiff's left-side weakness, but stated that Plaintiff "continues to be totally and permanently disabled from [her] rare condition." R. 362. In a treatment note from December 27, 2007, Dr. Avgeropoulos again opined that Plaintiff had "cognitive and emotional limitations resultant of paraneoplastic syndrome . . . that render her disabled . . . ." R. 361.

The December 27th treatment note also stated that Plaintiff had "physical limitations and potentially new tumor condition that needs to be elucidated as well but regardless is debilitating." Id.

The ALJ noted the opinion and treatment notes of Dr. Avgeropoulos in his decision. R. 24, 29. In the portion of the ALJ's decision addressing Plaintiff's RFC following her medical improvement, he stated that, contrary to Dr. Avgeropoulos's decision that Plaintiff remained disabled, his treatment notes "do not list any vocational limitations after November 22, 2007, that would prevent all competitive work." R. 30. In addition, the ALJ stated that the ultimate question of disability is reserved for the Commissioner. As a result, he accorded "some weight" to Dr. Avgeropoulos's "assessments and treatment notes," but gave little weight to his opinion as to Plaintiff's disability. Id.

The ALJ also accorded reduced weight to the opinion of neuropsychologist Casey Haddix, Psy.D., who examined Plaintiff in October of 2007. As noted by the ALJ, Dr. Haddix's neuropsychological evaluation indicated that Plaintiff suffered from cognitive disorder due to limbic encephalitis; personality disorder due to limbic encephalitis, combined type with labile, disinhibited, and paranoid features; and pain disorder associated with both psychological factors and a general medical condition. R. 25, 340. Dr. Haddix indicated a positive prognosis for functional independence, but opined that, as of the date of the evaluation, Plaintiff did not "demonstrate social interaction and adaptation skill sufficient that she could successfully return to work." R. 341.

In contrast to Dr. Avgeropoulos and Dr. Haddix, the ALJ accorded "substantial weight" to the opinions of Dr. Eric Weiner, a non-examining physician who conducted a

psychiatric review in November of 2007 based on a review of Plaintiff's medical records; Dr. Guillermo Merrero, who performed a consultive evaluation in October of 2007; and Dr. Gross, the ME who testified at the hearing and whose opinion was based on a review of Plaintiff's medical records and observation during the March 12, 2010 video hearing. R. 25, 29-30.

Plaintiff emphasizes that Dr. Avgeropoulos's treatment notes disclose ongoing cognitive, physical, and psychological impairments, and he takes issue with the ALJ's reliance on Dr. Gross's "spur of the moment assessment" during the video hearing. Pl.'s Br., pp. 12-13. The Commissioner, on the other hand, stresses the portions of the treatment notes suggesting improvement and argues that the ALJ properly considered Dr. Avgeropoulos's opinion within the context of the entirety of the medical evidence.   The Commissioner asserts that the ALJ's post-November 22, 2007 RFC determination was therefore supported by substantial evidence. Id. at 5-8.

The Court agrees with the Commissioner that the opinion of Dr. Avgeropoulos as to the ultimate issue of Plaintiff's disability was not entitled to significant weight, as that determination is reserved to the Commissioner.[3]  See SSR 96-5p; see also 20 C.F.R. § 404.1527(e); Cooper, 373 F. App'x at 962.  However, the fact that a portion of a treating source opinion addresses an issue reserved to the Commissioner does not justify discounting

---

[3]The same is true of the opinion of Dr. Haddix, who opined after a psychological evaluation that Plaintiff was unable to work.  However, there appears to be some question as to whether Dr. Haddix, who performed a single multi-day evaluation, qualifies as a treating source.  See Comm'r's Br., p. 11 n. 13.  Because the ALJ's improper discounting of the opinion of Dr. Avgeropoulos warrants remand for the reasons discussed below, the Court need not determine whether Dr. Haddix qualifies as a treating source or whether the ALJ improperly discounted Dr. Haddix's opinion.

the opinion in its entirety.[4] Therefore, the Court turns to the issue of whether the reasons provided by the ALJ justify discounting the portions of Dr. Avgeropoulos's records that did not purport to offer an opinion of the ultimate issue of Plaintiff's disability.

The only other reason offered by the ALJ for discounting Dr. Avgeropoulos's opinion is that "[Dr. Avgeropoulos's] own treatment notes . . . do not list any vocational limitations after November 22, 2007, that would prevent all competitive work." R. 30. In his brief, the Commissioner similarly asserts that, "while generally noting cognitive deficits (particularly 'memory and language processing'), Dr. Avgeropoulos never opined any specific work-related limitations, but simply concluded that Plaintiff was disabled." Comm'r's Br., pp. 7-8.

The Court disagrees. Initially, as Plaintiff points out, Dr. Avgeropoulos's opinion is not conclusory in that his records document specific limitations associated with Plaintiff's condition. See Pl.'s Br., p. 13. Indeed, the above-quoted portion of the Commissioner's brief notes an example of a specific limitation from Dr. Avgeropoulos's records – Plaintiff's impaired memory and language processing due to her "residual cognitive deficit" – in the same sentence in which he asserts that Dr. Avgeropoulos opined Plaintiff was disabled in a conclusory fashion. Comm'r's Br., pp. 7-8. Dr. Avgeropoulos's treatment notes also indicate that Plaintiff suffered from "fine motor inabilities" on her left side, as well as psychological and emotional limitations, all of which, like her cognitive impairment, resulted from her paraneoplastic limbic encephalitis. R. 361-65.

---

[4]The ALJ appeared to recognize this distinction in that he accorded "some weight" to Dr. Avgeropoulos's "assessments and treatment notes," but gave "little weight" to his opinion as to Plaintiff's disability. R. 30.

There can be no doubt that these constituted vocational (*i.e.*, work-related) impairments, in that they are the same impairments that the ALJ found to be "severe" within the meaning of the SSI and DIB regulations, R. 23, which means that they "significantly limited [Plaintiff's] physical and mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) & 920(c); see also Presley v. Astrue, 2007 U.S. Dist. LEXIS 95570, at *9 (D. Kan. Oct. 11, 2007) ("By definition, a 'severe' impairment 'significantly limits [a claimant's] physical or mental ability to do basic work activities.'" (quoting 20 C.F.R. §§ 404.1520(c) & 920(c))).[5] Moreover, both the ALJ's severity finding and Dr. Avgeropoulos's treatment records confirm that Plaintiff continued to suffer from these impairments following November 22, 2007. See R. 23, 361-66.

Because the impairments identified in Dr. Avgeropoulos's treatment notes were "vocational" and continued after November 22, 2007, the ALJ's statement that Dr. Avgeropoulos's "treatment notes . . . do not list any vocational limitations after November 22, 2007, that would prevent all competitive work," amounts to an unjustified refusal to grant substantial weight to Dr. Avgeropoulos's opinion as to the nature and severity of Plaintiff's impairments. It is well-established that the ALJ may properly discount the opinion of a treating physician if it is inconsistent with the physician's own treatment notes. See Edwards, 937 F.2d at 583-84. Here, the ALJ cites inconsistency with treatment notes as a basis for discounting Dr. Avgeropoulos's opinion as to the nature and severity of Plaintiff's

---

[5]Further evincing the fact that Plaintiff's cognitive impairments were vocational in nature is the ALJ's finding that Plaintiff's "cognitive disorder due to limbic encephalitis" rendered her unable "to do sustained work-related physical and mental activities in a work setting" prior to November 23, 2007. R. 23.

12

impairments. However, the ALJ fails to identify any inconsistency that is borne out by the content of the treatment notes, and mere disagreement with Dr. Avgeropoulos as to the nature and severity of Plaintiff's impairments after November 22, 2007, does not show good cause for according less than substantial weight to that treating source opinion.

This deficiency is compounded by the fact that none of the opinions accorded substantial weight came from treating sources. Moreover, only one of the opinions given substantial weight came from an examining physician, Dr. Marrero, a one-time examiner whose evaluation, as Plaintiff points out, focused primarily on Plaintiff's physical limitations. See Pl.'s Br., pp. 16; R. 317-20. The other two opinions given substantial weight were provided by a non-examining physician and the ME, the latter of which based his opinion, in part, on observations made during the video hearing held roughly two and a half years after the date of Plaintiff's purported medical improvement. See Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir. 1988) ("The good cause required before the treating physicians' opinions may be accorded little weight is not provided by the report of a nonexamining physician where it contradicts the report of the treating physician."); Sharfarz v. Bowen, 825 F.2d 278, 280 (11th Cir.1987) ("The opinions of nonexamining, reviewing physicians, . . . when contrary to those of examining physicians are entitled to little weight in a disability case, and standing alone do not constitute substantial evidence."); Spencer ex rel. Spencer v. Heckler, 765 F.2d 1090, 1093-94 (11th Cir. 1985) (*per curiam*).

The Commissioner also argues that remand is unnecessary because portions of the record not relied upon by the ALJ in discounting Dr. Avgeropoulos's opinion nevertheless provide good cause for giving less than substantial weight to the opinion. For example, the

Commissioner points to the portions of Dr. Avgeropoulos's treatment notes that suggest neurological improvement, arguing they show inconsistency with his opinion regarding Plaintiff's impairments. See Comm'r's Br., p. 8. The Court declines this invitation to conduct a *de novo* review of the evidence with regard to Dr. Avgeropoulos's opinion, as such determination is for the ALJ, not this Court, to make in the first instance.[6] See Martin v. Heckler, 748 F.2d 1027, 1031 (5th Cir. 1984) (noting it to be "inappropriate on judicial review for the first time to apply administrative criteria not themselves considered by the [Commissioner]"). Indeed, as noted above, the Court's "limited review [of the record] precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence." Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005) *(per curiam)* (citing Bloodsworth, 703 F.2d at 1239).

In sum, because the ALJ improperly discounted the opinion of Plaintiff's treating physician, a remand is warranted.[7]

---

[6]However, the Court notes that a physician's documentation of medical improvement is not necessarily inconsistent with a concomitant opinion that an individual still suffers from an impairment that, because of its nature and severity, precludes the ability to work. See McAulay v. Heckler, 749 F.2d 1500, 1500-1501 (11th Cir. 1985) *(per curiam)* (noting that evidence of medical improvement does not necessarily reflect "improvement to the point of no disability").

[7]In light of its determination that the Commissioner's decision is not supported by substantial evidence due to the ALJ's improper disregard of the opinion of Plaintiff's treating physician, the Court need not reach the remainder of Plaintiff's contentions. Of course, on remand, Plaintiff's claims must be evaluated in compliance with the applicable regulations and case law in all respects. For example, on remand, any testimony provided by a VE should be relied upon only if given in response to a hypothetical question that accurately and comprehensively reflects Plaintiff's characteristics. See McSwain v. Bowen, 814 F.2d 617, 619-20 (11th Cir. 1987) *(per curiam)*; Pendley v. Heckler, 767 F.2d 1561, 1562-63 (11th Cir. 1985) *(per curiam)*; see also Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999) ("In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical

## IV.  CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS**, pursuant to sentence four of 42 U.S.C. § 405(g), that the Commissioner's final decision be **REVERSED** and that the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

SO REPORTED and RECOMMENDED this 18th day of April, 2012, at Augusta, Georgia.

_____
W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

question which comprises all of the claimant's impairments."); Coleman v. Barnhart, 264 F. Supp.2d 1007, 1011 (S.D. Ala. 2003).  Given Plaintiff's representation by new counsel, the issue of her right to legal representation appears unlikely to present a significant concern on remand, although the Court presumes that the Commissioner will continue to ensure the validity of any future waiver of this right.